# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| MANUEL SALVADOR GUERRA VASQUEZ § § § <br> v. § § <br> UNITED STATES OF AMERICA, § <br> ALEJANDRO MAYORKAS, Secretary § <br> of Homeland Security, in His Official § <br> Capacity, TAE JOHNSON, Acting § <br> Director of U.S. Immigration and § <br> Customs Enforcement, in His Official § <br> Capacity, U.S. Immigration and § <br> Customs Enforcement Officer John § <br> Doe(s), and MERRICK GARLAND, § <br> U.S. Attorney General, in His Official § <br> Capacity § | CIVIL ACTION NO. 3:24-CV-0629-S |

## **MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses Defendants' Motion to Dismiss ("Motion") [ECF No. 6]. The Court has reviewed the Motion, Plaintiff Manuel Salvador Guerra Vasquez's Response in Opposition to the Motion ("Response") [ECF No. 10], Defendants' Reply in Support of the Motion ("Reply") [ECF No. 11], Plaintiff's Surreply in Opposition to the Motion ("Surreply") [ECF No. 12], Defendants' Notice of Supplemental Authority [ECF No. 26], Plaintiff's Response to Defendants' Notice of Supplemental Authorities [ECF No. 27], and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

### I. BACKGROUND

In this case, Plaintiff claims that he was unlawfully detained and removed from the United States in 2007 and 2008, even though he allegedly is a United States citizen. Pl.'s Original Compl. ("Complaint") [ECF No. 1] ¶¶ 1, 3, 41-45. Plaintiff sues the United States of America, along with Alejandro Mayorkas, Secretary of the Department of Homeland Security, Tae Johnson, Acting

Director of U.S. Immigration and Customs Enforcement ("ICE"), and Merrick Garland, United States Attorney General, all in their official capacities.[1] *Id.* ¶¶ 11-14. Plaintiff also asserts claims against unidentified John Doe Immigration and Customs Enforcement Officers ("Doe Defendants"). *Id.* ¶ 15.

Plaintiff was born in 1962 in Mexico. *Id.* ¶ 29. Plaintiff's parents are Antonio Guerra Rodriguez ("Antonio") and Paulina Vasquez. *Id.* Antonio was born in 1944 in Mexico. *Id.* ¶ 30. His mother (Plaintiff's grandmother), Cruz Rodriguez de Guerra ("Cruz"), was born in 1924 in Kansas and thus was a United States citizen. *Id.* ¶¶ 30-31.[2] At some point in her life, Cruz "was forced to stay behind in Mexico." *Id.* ¶ 32. In 1940, she attempted to reenter the United States. *Id.* ¶ 33; Compl., Ex. B [ECF No. 1-3] 2. However, officers at the border erroneously told her that she could not enter because she had "abandoned her residence." Compl. ¶ 33. Many years later, Cruz successfully established her citizenship and, in 1981, petitioned for Antonio's admission. *Id.* ¶¶ 30, 35-36; Compl., Ex. C [ECF No. 1-4] 1. Antonio eventually was admitted to the United States as a lawful permanent resident in 1990. Compl. ¶ 35. However, Plaintiff "was forced to remain living apart from him in Mexico." *Id.* ¶ 36.

In 1995, Plaintiff lawfully entered the United States on a nonimmigrant B2 visa. *Id.* Subsequently, Plaintiff entered the United States several more times.[3] *Id.* ¶ 38. On at least one occasion, in 2007, Plaintiff was charged as an inadmissible immigrant, issued a Notice to Appear,

---

[1] The individuals filling these roles have changed since Plaintiff filed his Complaint; however, the Court will use the names used in the Complaint here.

[2] Throughout the Complaint and briefing on the Motion, Plaintiff includes inaccurate factual allegations that appear to have been copied from another related lawsuit. For example, Plaintiff here refers to Cruz as his "great-grandmother" even though Plaintiff clarifies elsewhere that Cruz was his father's mother. *See, e.g.*, Compl. ¶ 23. Therefore, in this Memorandum Opinion and Order, the Court has attempted to reconcile discrepancies, rely on facts supported by evidence, and disregard factual errors.

[3] Although Plaintiff does not explicitly say so, it appears that all of these entries were unauthorized.

and placed into removal proceedings before the Executive Office for Immigration Review. *Id.* ¶¶ 39, 41. Plaintiff appeared before an immigration judge, who issued him an order of voluntary departure. *Id.* ¶ 41. Plaintiff reentered the United States in 2008 and was placed into federal criminal proceedings. *Id.* ¶ 42. Plaintiff entered a guilty plea and was sentenced to time served. *Id.* ¶ 43. Following his conviction, Plaintiff appeared before an immigration judge and was deported to Mexico. *Id.* ¶ 45. According to Plaintiff, his A-file[4] contained evidence of his United States citizenship or eligibility for adjustment of status that the immigration judge and ICE should have reviewed. *Id.* ¶¶ 46-48.

Following his 2008 deportation, Plaintiff "made the difficult decision to return to the United States without being inspected by an immigration officer." *Id.* ¶ 49. Since that time, he "has been forced to live the life of an undocumented immigrant." *Id.* On August 19, 2021, Plaintiff's brother sought a certificate of citizenship. *Id.* ¶ 50. Although United States Citizenship and Immigration Services granted that request, it has since issued a Notice of Intent to Cancel the Certificate of Citizenship. *Id.* ¶¶ 51, 53.

As a result of the foregoing, Plaintiff alleges that he "was unlawfully detained, unlawfully deported, and separated from his family in the United States for approximately three months." *Id.* ¶ 57. Plaintiff seeks a declaration that he is a United States citizen and an injunction preventing Defendants from refusing to acknowledge his citizenship. *Id.* ¶¶ 69-78. Plaintiff also brings causes of action under the Federal Tort Claims Act ("FTCA") for negligence, gross negligence, false arrest, wrongful imprisonment, intentional infliction of emotional distress, and malicious abuse of process. *Id.* ¶¶ 79-93, 99-108. Plaintiff brings constitutional claims for violations of substantive

---

[4] An A-file "'contain[s] document relating to any and all interactions which [a] non-citizen has had with' immigration agencies." *United States v. Noria*, 945 F.3d 847, 850 n.5 (5th Cir. 2019) (citation omitted).

and procedural due process.[5] *Id.* ¶¶ 94-98. Finally, Plaintiff seeks post-conviction habeas relief under 28 U.S.C. § 2255. *Id.* ¶¶ 109-12. Defendants[6] move to dismiss all of Plaintiffs' claims.

## II. LEGAL STANDARD

### *A. Rule 12(b)(1)*

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *La. Real Est. Appraisers Bd. v. Fed. Trade Comm'n*, 917 F.3d 389, 391 (5th Cir. 2019) (quoting *Texas v. Travis County*, 910 F.3d 809, 811 (5th Cir. 2018)). Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge the subject matter jurisdiction of the district court to hear a case. The district court may dismiss for lack of subject matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). If the court determines that it lacks subject matter jurisdiction, it must dismiss the action. FED. R. CIV. P. 12(h)(3).

---

[5] Plaintiff's constitutional claims appear to only name Doe Defendants. *See* Compl. ¶¶ 95, 97-98. Nevertheless, for the sake of thoroughness, and because the Court ultimately concludes that Doe Defendants must be dismissed, the Court will analyze these claims below.

[6] Doe Defendants have not appeared and thus are not included in the Motion. *See* Mot. 1 n.1.

### *B. Rule 12(b)(6)*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (citation omitted). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). It only determines whether the plaintiff has stated a claim upon which relief can be granted. *See id.*

### III. ANALYSIS

Defendants move to dismiss Plaintiff's claims for a variety of reasons. Below, the Court first considers whether 8 U.S.C. § 1252(g) prevents the Court from exercising jurisdiction over Plaintiff's claims. Next, the Court determines whether the surviving claims are time barred. Finally, the Court analyzes whether it has jurisdiction over Plaintiff's remaining causes of action.

### *A. Subject Matter Jurisdiction*

Defendants move to dismiss Plaintiff's claims on the ground that 8 U.S.C. § 1252(g) precludes judicial review. Mot. 7-10. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." According to Plaintiff, Section 1252(g) is inapplicable because it only applies to "any alien," and "Defendants have not argued or established that Plaintiff is an alien." Resp. 6. Further, Plaintiff appears to dispute whether certain of his FTCA claims arise from his removal.[7] *Id.*

### *i. Plaintiff's Citizenship*

To address Plaintiff's first argument, the Court must determine whether he is a United States citizen. The applicable law for determining an individual's citizenship is the statute in effect at the time of his birth. *Garza-Flores v. Mayorkas*, 38 F.4th 440, 444 (5th Cir. 2022) (citation omitted). Under the version of 8 U.S.C. § 1401(a)(7) in effect in 1962, those who gain United States citizenship at birth include:

> a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years . . . .

---

[7] Plaintiff also argues that United States Citizenship and Immigration Services approved his Form N-600 based on a determination that he was a citizen before he was placed into removal proceedings, thus depriving the immigration judge of jurisdiction over his removal proceedings. Resp. 7. This argument appears to be erroneously copied from a related case, as Plaintiff's Form N-600 has not been approved. *See, e.g.*, Resp. 15; Surreply 2; *see also* Reply 3 n.5. As such, the Court will not address this argument.

6

8 U.S.C. § 1401(a)(7) (1952). Thus, Plaintiff must prove that his father, who the Court will assume arguendo is a United States citizen,[8] was physically present in the United States for a period or periods totaling not less than ten years prior to Plaintiff's birth.

Plaintiff concedes that his father "liv[ed] in Mexico from approximately 1944 to 1972." Resp. 9. Therefore, Plaintiff's father could not have been physically present in the United States for the requisite ten-year period. Nevertheless, Plaintiff argues that his father was constructively present during this time "based on the defenses of unawareness and/or impossibility." *Id.*

If a person is not physically present in the United States, they may nonetheless be deemed constructively present if, for example, they are prevented from staying in or returning to the United States by forces outside of their control. Typically, constructive presence arguments are made in cases involving retention of citizenship by an individual, not transmission of citizenship from one person to another. *See Madar v. U.S. Citizenship & Immigr. Servs.*, 918 F.3d 120, 123 (3d Cir. 2019). Although the Fifth Circuit does not appear to have addressed the issue, the courts of appeals that have considered it "have uniformly rejected extending the constructive physical presence doctrine to transmission of citizenship." *Id.*; *see also Drozd v. I.N.S.*, 155 F.3d 81, 87 (2d Cir. 1998) (collecting cases). Two main reasons support this conclusion. First, the applicable statute sets forth only two exceptions to the physical presence requirement, neither of which are applicable here. *See Madar*, 918 F.3d at 123 (citation omitted); *Rego Valdes v. U.S. Att'y Gen.*, 133 F. App'x 588, 589-90 (11th Cir. 2005) (citation omitted). Second, the concern for "find[ing] that Congress could take away citizenship without the citizen's consent" motivates the application of constructive residence in retention cases, and that concern is not present in transmission cases.

---

[8] Plaintiff does not allege that his mother is a United States citizen, and his birth certificate lists her nationality as Mexican. Compl., Ex. A [ECF No. 1-2] 1-2; *see also* Compl. ¶ 29 ("Plaintiff acquired United States citizenship at birth through his father[.]").

7

*Runnett v. Shultz*, 901 F.2d 782, 784 (9th Cir. 1990) (citation omitted); *see also Madar*, 918 F.3d at 123-24 (citation omitted). Therefore, to the extent Plaintiff contends that his father, Antonio, was prevented from being physically present in the United States for any reason other than an error by the United States government, his argument fails. *See Runnett*, 901 F.2d at 783-85 (rejecting constructive presence argument where citizen parent was "ignorant of her U.S. citizenship until after [her child's] birth").

However, Plaintiff also seemingly argues that a governmental error prevented Antonio from satisfying the physical presence requirement. *See* Resp. 9-10. In his affidavit, Antonio states that once, before he was born, his mother "tried to enter the United States as a citizen sometime in 1940 but could not do so because she had abandoned her residency." Compl., Ex. B, at 2. He continues: "I do not remember what happened regarding my mother and her claim to citizenship. All I know is that we were forced to stay in [Mexico] and my mother lived there until at least 1974." *Id.*

There is some precedent for the proposition that a governmental error may allow the use of the constructive presence doctrine in the transmission of citizenship context. In *Matter of Navarrete*, 12 I. & N. Dec. 138 (B.I.A. 1967), a mother petitioned to have her children's citizenship recognized after an officer determined that she was a citizen in a prior proceeding. *Id.* at 138-39. The officer in the prior proceeding determined that the mother was excused from complying with residence requirements for retention of citizenship because "she was prevented from complying . . . by an erroneous interpretation of her citizenship status by a United States official." *Id.* at 141 (citation omitted). The BIA in *Navarrete* then concluded that this period of constructive presence could also be counted as the period of physical presence required for her to pass her citizenship to her children when they were born. *Id.* at 141-42. Circuit courts generally have limited

8

the applicability of *Navarrete* to cases that "turn[] on a government error." *Madar*, 918 F.3d at 124; *see also Tullius v. Albright*, 240 F.3d 1317, 1321 (11th Cir. 2001) (citations omitted).

Although Plaintiff alleges that a government error prevented Cruz, his grandmother, from being present in the United States, this case is distinguishable from *Navarrete* for two reasons. First, the *Navarrete* plaintiff's constructive residence had already been established in a prior proceeding. 12 I. & N. Dec. at 141. By contrast, although Cruz ultimately had her citizenship recognized, Plaintiff does not allege that a court ever found Cruz to be constructively present or otherwise waived any applicable residence requirements. Second, *Navarrete* involved a mother— the person deemed to be constructively present—seeking to transmit citizenship to her children. *Id.* at 138-39. Here, Plaintiff seems to argue that the same government error that affected Cruz also prevented Antonio, his father, from being physically present, since Cruz was unable to enter the United States and pass her citizenship to him.[9] In other words, Plaintiff asks the Court to determine that Cruz's constructive presence allows her to transmit her citizenship to Antonio and that Antonio was also constructively present to transmit his citizenship to Plaintiff. Plaintiff's argument stretches the reasoning of *Navarrete* too far. Therefore, Plaintiff is not a citizen, and Section 1252(g) applies.

### ii. Plaintiff's Claims

Next, the Court must determine whether Plaintiff's claims "aris[e] from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).

---

[9] Notably, the government's error did not prevent Antonio from entering the United States, as he ultimately did so in "the early 1970's," before Cruz's citizenship was recognized in 1981. Compl., Ex. B, at 3; Compl. ¶ 30.

9

The Court concludes that Plaintiff's FTCA claims for negligence, gross negligence, and malicious abuse of process all arise from his removal. *See* Compl. ¶¶ 81 (alleging that Defendants breached their duty to Plaintiff when they deported him); 86-87 (same); 107 ("[Plaintiff] can establish abuse of process here, since federal agents . . . illegally and improperly removed him from the United States[.]"). The Court reaches the same conclusion with respect to Plaintiff's constitutional claims. *See id.* ¶¶ 95 (challenging Plaintiff's deportation as a violation of Plaintiff's right to substantive due process); 97-98 (arguing that Defendants' actions in deporting Plaintiff violated his right to procedural due process).

Due to errors in the Complaint, however, the Court cannot determine whether Plaintiff's FTCA claims for false arrest, wrongful imprisonment, and intentional infliction of emotional distress arise from removal proceedings. In *Najera v. United States*, 926 F.3d 140 (5th Cir. 2019), the Fifth Circuit held that "removal proceedings commence when [ICE] files the appropriate charging document with the immigration court." 926 F.3d at 143 (alteration in original) (citation omitted). Because ICE did not file the charging document until two days after the *Najera* plaintiff's allegedly false imprisonment ended, his claim did not arise from removal proceedings and thus was not barred by Section 1252(g). *See id.* Here, Plaintiff makes only vague allegations about his removals in 2007 and 2008. *See* Compl. ¶¶ 41-42. Plaintiff provides his 2007 Notice to Appear but does not state whether he was arrested or detained in 2007 and, if so, whether the Notice to Appear was issued before or after he was detained. *See* Compl., Ex. G [ECF No. 1-8]. And the false arrest, wrongful imprisonment, and intentional infliction of emotional distress sections of the Complaint appear to have been copied in their entirety from a related case, as they contain

10

allegations regarding detention and deportation in 2021, as opposed to 2007 and 2008.[10] *See* Compl. ¶¶ 85-86, 91-92, 101. As such, the Court cannot conclusively determine whether it has jurisdiction over Plaintiff's false arrest, wrongful imprisonment, and intentional infliction of emotional distress claims.

Finally, the Court determines that Plaintiff's requests for declaratory, injunctive, and post-conviction habeas relief do not necessarily arise from Plaintiff's removal. As such, Section 1252(g) does not bar the Court's review of these causes of action.

### *B. Statute of Limitations*

Even if the Court has jurisdiction over Plaintiff's remaining FTCA claims and his habeas claim, however, they are time barred.

#### *i. FTCA Claims*

An FTCA claim must be presented to the appropriate federal agency within two years after the claim accrues. *Johnson v. United States*, 460 F.3d 616, 621 (5th Cir. 2006) (citing *United States v. Kubrick*, 444 U.S. 111, 113 (1979)). "The general rule under the FTCA is that a tort action accrues at the time of a plaintiff's injury." *Id.* (citing *Kubrick*, 444 U.S. at 120). If the plaintiff was not aware of the injury or could not have discovered facts critical to ascertaining the injury's cause, the claim will not accrue until the plaintiff knows both his injury and its cause. *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 487-88 (5th Cir. 2016) (citations omitted).

Plaintiff submitted his Administrative Tort Claim to the Department of Homeland Security on May 27, 2023. Compl. ¶ 7. Plaintiff's causes of action for false arrest, wrongful imprisonment, and intentional infliction of emotional distress accrued at the latest when he was deported in

---

[10] The facts related to incidents in 2021 are contradicted by Plaintiff's factual allegations earlier in the Complaint. He alleges that he was deported in 2008, returned to the United States sometime after that, and has been "liv[ing] the life of an undocumented immigrant" in the United States since then. Compl. ¶ 49.

11

2008—more than a decade earlier. *See Ortega v. United States*, 547 F. App'x 384, 387 (5th Cir. 2013) (concluding that FTCA claims accrued immediately after the plaintiff's arrest and deportation because he was aware of his injury and its cause on that date). Nevertheless, Plaintiff contends that these claims are not time barred because he has continued to suffer an ongoing injury. Resp. 13-17. Further, he argues that the accrual date of the claims should be equitably tolled because he has been diligently pursuing his rights and because the government's failure to recognize his citizenship prevented him from asserting his claims earlier. *Id.* at 17-20. The Court disagrees with both arguments.

"The Fifth Circuit has yet to decide whether the continuing tort doctrine applies in the FTCA context." *Brown v. United States*, No. A-18-CV-857-RP, 2019 WL 2396172, at *2 (W.D. Tex. June 6, 2019) (citing *Young v. United States*, 727 F.3d 444, 447 (5th Cir. 2018)). But even assuming the doctrine applied in the FTCA context, it would not apply here. The continuing tort doctrine holds that "the cause of action is not complete and does not accrue until the tortious acts have ceased." *Patel v. United States*, 398 F. App'x 22, 30 (5th Cir. 2010) (citation omitted). Here, the tortious acts Plaintiff challenges have undeniably ceased. Outside of erroneous references to actions occurring in 2021, *see supra* pp. 10-11 & n.10, Plaintiff does not claim that he has been arrested, imprisoned, or deported since 2008, and these allegedly tortious actions form the basis of all three of Plaintiff's remaining FTCA claims. *See* Compl. ¶¶ 85 (false arrest); 91 (wrongful imprisonment), 102 ("[Plaintiff] has suffered severe emotional distress as the natural and foreseeable consequence of having been wrongfully detained and deported from the United States[.]"). Plaintiff cannot rely on the continuing tort doctrine to render his claims timely.

With respect to Plaintiff's second argument, equitable tolling is available when a plaintiff establishes: (1) that he has been pursuing his rights diligently; and (2) that an extraordinary

circumstance stood in his way and prevented timely filing. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (citation omitted). Here, the government's failure to recognize Plaintiff's purported citizenship does not rise to the level of an extraordinary circumstance. The government still has not recognized Plaintiff's citizenship, yet he submitted his administrative claim and later filed this lawsuit. Therefore, this circumstance did not impact Plaintiff's ability to assert his claims. Moreover, Plaintiff had sufficient facts to proceed with filing long before he finally submitted his claim in 2023. Plaintiff's grandmother, Cruz, obtained formal recognition of her citizenship in 1981. *See, e.g.*, Compl., Ex. C, at 1. And Plaintiff himself describes his claim to citizenship as "easily traceable." Compl. ¶ 55. Plaintiff is not entitled to the benefit of equitable tolling.

### ii. Habeas Claim

Plaintiff seeks post-conviction habeas relief under 28 U.S.C. § 2255 based on his assertion that he is a United States citizen. Compl. ¶¶ 110-11. Section 2255 claims are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). The limitations period runs from the latest of: (1) the date the judgment of conviction becomes final; (2) the date on which the impediment to filing a motion is removed, if governmental action prevents the movant from filing a motion; (3) the date on which the Supreme Court recognizes a right that it did not previously recognize; and (4) the date on which the facts supporting the claim could have been discovered through the exercise of due diligence. *Id.* Here, there was no impediment to filing and no newly recognized right, so the second and third options are unavailable. As discussed above, Plaintiff could have discovered his claim to citizenship well over one year before filing suit in 2024, so the fourth option does not save Plaintiff's claim. As to the first option, the judgment against Plaintiff became final more than one year before Plaintiff filed suit. *See* Mot. 24-25; *see also United States v. Tamez*, No. 7:23-CV-

00313, 2025 WL 723026, at *1 (S.D. Tex. Mar. 5, 2025) ("The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired." (citing *Clay v. United States*, 537 U.S. 522, 531-32 (2003); *United States v. Gamble*, 208 F.3d 536, 536-37 (5th Cir. 2000))). Further, Plaintiff has not established any basis for equitable tolling. For these reasons, Plaintiff's habeas claim is also time barred.

### *C. Claims for Declaratory and Injunctive Relief*

With all of Plaintiff's substantive claims dismissed, only his request for a declaration of his citizenship and petition for an injunction barring Defendants from refusing to recognize that citizenship remain. When a plaintiff's substantive claims have been dismissed, "it is appropriate also to dismiss any declaratory-judgment request." *Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 218 (5th Cir. 2015) (citation omitted). Similarly, "an injunction is a remedy that must be supported by an underlying cause of action." *Crook v. Galaviz*, 616 F. App'x 747, 753 (5th Cir. 2015) (citation omitted). Therefore, the Court's dismissal of Plaintiff's substantive claims mandates dismissal of his requests for injunctive and declaratory relief as well.

### *D. Doe Defendants*

Although Doe Defendants have not yet been identified and thus did not join in the Motion, the Court concludes that their sua sponte dismissal is appropriate. *See McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) ("The court possesses the inherent authority to dismiss the action sua sponte, without motion by a defendant." (emphasis and citation omitted)). For the reasons stated above, all of Plaintiff's claims fail. As such, the Court dismisses Plaintiff's claims against Doe Defendants. *See, e.g., Bohannan v. Doe*, 527 F. App'x 283, 292 (5th Cir. 2013) (affirming dismissal of claims against unknown defendants for failure to state a claim).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss [ECF No. 6]. Plaintiff's claims are **DISMISSED**.

**SO ORDERED.**

SIGNED March 17, 2025.

_____
**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**